Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| JUAN ROMERO HERNÁNDEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202300634 | *REVISIÓN ADMINISTRATIVA* procedente de la División de Remedios Administrativos<br><br>Caso número: GUE-11210 |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 30 de enero de 2024.

Comparece ante nos, por derecho propio, la parte recurrente, Juan Romero Hernández, mediante revisión judicial y solicita que revoquemos las determinaciones emitidas por el Programa de Desvío del Departamento de Corrección y Rehabilitación el 26 de septiembre de 2023, notificadas el 16 de octubre del mismo año. Mediante los referidos dictámenes, la agencia denegó al recurrente su participación en el Programa de Pase Extendido con Monitoreo Electrónico, así como en los Programas Religiosos y Hogar CREA.

Por los fundamentos que expondremos a continuación, se confirman las determinaciones administrativas recurridas. Veamos.

## I

Surge del *Informe para Evaluación del Plan Institucional* que obra en autos que, Juan Romero Hernández (Romero Hernández o recurrente) fue sentenciado a ciento cincuenta y tres (153) años de reclusión por asesinato en primer grado, robo domiciliario, conspiración, entre otros delitos.[1] Asimismo, se desprende que, el 14 de junio de 2023, notificado al día siguiente, el Comité de Clasificación y Tratamiento del Departamento de

---

[1] Véase, *Informe para Evaluación del Plan Institucional* en el expediente administrativo.

Número Identificador

SEN2024 _____

Corrección y Rehabilitación (DCR) reclasificó la custodia de Romero Hernández de mediana a mínima. Igualmente, refirió su caso a la unidad de Programas de Desvío del mencionado organismo administrativo.

Posteriormente, el 26 de septiembre de 2023, notificada el 16 de octubre del mismo año, el Programa de Desvío del DCR emitió la *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Pase Extendido con Monitoreo Electrónico*, así como la *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Religiosos [sic] y Hogar CREA*, que nos ocupan.[2] En ambos dictámenes, el DCR denegó la participación de Romero Hernández en el Programa de Pase Extendido con Monitoreo Electrónico y en los Programas Religiosos y Hogar CREA. En esencia, determinó que Romero Hernández no cumplía con los criterios de elegibilidad. Específicamente, el DCR fundamentó ambas decisiones en lo siguiente:

No cualifica en virtud de lo dispuesto en la Ley [Núm.] 49 del 26 de mayo de 1995.

Delito Excluyente: Asesinato en 1er Grado

Inconforme, el 20 de octubre de 2023, recibida en la Secretaría de este Foro el 7 de diciembre de 2023, la parte recurrente presentó el recurso de epígrafe y señaló los siguientes errores:

Erró la Coordinadora [de] Programas de [D]esvío[,] Sra. Selma Ríos Calderón[,] al utilizar como fundamento para denegar la solicitud de programas de desvío la Ley [Núm.] 49 del 26 de mayo de 1995.

Erró la Coordinadora [de] Programas de [D]esvío indicando que el Plan de [R]eorganización #2 del 21 de noviembre de 2011, excluye de [los] [p]rogramas de desvío el [a]sesinato en [p]rimer [g]rado.

Erró la [C]oordinadora [de] [P]rograma[s] de [D]esvío al violar el mandato [c]onstitucional a la [r]ehabilitación como derecho fundamental de los confinados[,] independientemente sea asesinato en primer grado o no.

Erró la Coordinadora [de] Programa[s] de [D]esvío por actuar de forma arbitraria e injustificada[,] en violación al derecho [a]

---

[2] Véase, *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Pase Extendido con Monitoreo Electrónico* y *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Religiosos [sic] y Hogar CREA* en el expediente administrativo.

la rehabilitación del recurrente [y] a la igual protección de la[s] leyes y reglamentos.

En cumplimiento con nuestra *Resolución* del 15 de diciembre de 2023, la parte recurrida compareció mediante *Escrito en Cumplimiento de Resolución* el 11 de enero de 2024. Sostiene que, tanto el Plan de Reorganización Núm. 2-2011, *infra*, como el Reglamento Núm. 9488, *infra*, excluyen categóricamente a los miembros de la población correccional que, al igual que el recurrente, hayan sido sentenciados por delitos graves de primer grado. En ese sentido, arguye que, al denegar a la parte recurrente participar de los antedichos programas de desvío, la agencia aplicó correctamente la norma vigente a los hechos que surgen del expediente administrativo, sobre los cuales no hay controversia. Plantea que las determinaciones recurridas merecen la mayor deferencia, toda vez que el recurrente estaba claramente excluido de beneficiarse de los programas de desvío a base de fe y los Hogares CREA. A su vez, alega que la parte recurrente no ha apuntado prueba tendiente a rebatir la presunción de corrección y legalidad que les cobija a dichas determinaciones.

Con el beneficio de la comparecencia de las partes, así como con la copia certificada del expediente administrativo, nos disponemos a resolver el recurso que nos ocupa.

**II**

**A**

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar,

mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd*.; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd*. Véase, además, *Super Asphalt v. AFI y otro*, supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd*.

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), "estableció el marco de revisión judicial de las determinaciones de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por

evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones

que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 11.

**B**

La Sección 19 del Artículo VI de nuestra Constitución establece que será política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. ELA, LPRA, Tomo I. A raíz de ello, el Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, conocido como el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, 3 LPRA Ap. XVIII (Plan de Reorganización Núm. 2-2011), provee para un sistema de custodia de las personas que han sido encontradas incursas en la comisión de un delito o falta y para que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad. 3 LPRA Ap. XVIII, Art. 2. Asimismo, el citado Plan viabiliza los programas de desvío, mediante los cuales las personas convictas pueden cumplir parte de su sentencia fuera de la institución penal.

A esos fines, el Artículo 16 del Plan de Reorganización Núm. 2-2011, 3 LPRA Ap. XVIII, Art. 16, regula lo concerniente a los programas de desvío. En particular, el referido articulado rezaba como sigue:

> El Secretario establecerá mediante reglamento los objetivos de cada programa de desvío, cómo habrán de operar, los criterios y condiciones para la concesión de dicho privilegio, así como también los criterios, condiciones y proceso que habrá de seguirse para la revocación del privilegio y administrará los programas de desvío donde las personas convictas puedan cumplir parte de su sentencia fuera de la institución correccional. La opinión de la víctima habrá de tomarse en consideración como uno de los criterios para conceder el privilegio de ubicar a un miembro de la población correccional en un programa de desvío.
>
> No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas:
>
> > (a) Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:

(1) Escalamiento agravado, producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil;

(2) [T]oda persona convicta por delito grave de segundo grado o de un delito de mayor severidad;

(3) [V]iolaciones a las secs. 2101 et seq. del Título 24, conocidas como "Ley de Sustancias Controladas de Puerto Rico", excepto las violaciones a la sec. 2404 del Título 24, y

(4) [V]iolaciones a las secs. 561 et seq. del Título 25, conocidas como la "Ley de Explosivos de Puerto Rico";

(b) [T]oda persona convicta por la comisión de cualquier delito grave que no sea de los incluidos en el inciso (a) de este [A]rtículo, hasta que haya cumplido por lo menos un veinte (20) por ciento de la sentencia de reclusión en una institución correccional, excluyendo toda clase de bonificaciones y se determine por el Secretario que no representa una amenaza para la comunidad;

(c) [T]oda persona convicta por delito grave a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual de conformidad a las disposiciones del Código Penal de Puerto Rico de 2004; y

(d) [T]oda persona convicta mientras no haya satisfecho la pena especial dispuesta en la anterior sec. 4695 del Título 33.

Se podrá excluir de la aplicación de las disposiciones de este [A]rtículo a los miembros de la población correccional bajo la custodia del Departamento que confronten problemas de salud con prognosis de vida corta y con condiciones fisiológicas limitantes. Para que proceda esta exclusión deberá mediar una recomendación del Departamento acompañada de una certificación médica sobre el miembro de la población correccional con la prognosis de vida. Además, los miembros de la población correccional no deben representar peligro para la comunidad.

Nada de lo dispuesto en este [A]rtículo menoscaba el deber del Secretario de proveer y establecer programas de tratamiento y rehabilitación conforme a lo dispuesto en este Plan. 3 LPRA Ap. XVIII, Art. 16.

Ahora bien, el precitado articulado fue recientemente enmendado mediante la Ley Núm. 79 de 27 de septiembre de 2022 (Ley Núm. 79-2022). En la Exposición de Motivos de dicho estatuto, la Asamblea Legislativa entendió que en la población penal se debía "reenfocar el sistema y

comenzar a proveerle a este sector de la sociedad posibilidades reales que propendan a su rehabilitación". Además, sostuvo que no se justificaba que, en ciertos delitos graves, luego que la persona confinada haya completado una parte sustancial de su sentencia y exhibiera buena conducta, "se le niegue la oportunidad de brindarle un programa que propenda a su total rehabilitación y l[a] prepara para la libre comunidad". Exposición de Motivos, Ley Núm. 79-2022.

Conforme a lo anterior, la Ley Núm. 79-2022 enmendó el Artículo 16 del Plan de Reorganización Núm. 2-2011, *supra*, para que lea de la siguiente forma:

> El Secretario establecerá mediante reglamento los objetivos de cada programa de desvío, cómo habrán de operar, los criterios y condiciones para la concesión de dicho privilegio, así como también los criterios, condiciones y procesos que habrá de seguirse para la revocación del privilegio y administrará los programas de desvío donde las personas convictas puedan cumplir parte de su sentencia fuera de la institución correccional. La opinión de la víctima habrá de tomarse en consideración como uno de los criterios para conceder el privilegio de ubicar a un miembro de la población correccional en un programa de desvío. **No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas**:
>
> > **(a) Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:**
> >
> > > (1) Producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil;
> > >
> > > (2) [V]iolaciones a las secs. 2101 et seq. del Título 24, conocidas como "Ley de Sustancias Controladas de Puerto Rico", excepto las violaciones a la sec. 2404 del Título 24;
> > >
> > > (3) [V]iolaciones a las secs. 561 et seq. del Título 25, conocidas como la "Ley de Explosivos de Puerto Rico";
> > >
> > > **(4) [T]oda persona convicta por delito grave de primer grado.**
> >
> > (b) Toda persona convicta por la comisión de cualquier delito grave que no sea de los incluidos en el inciso (a) de esta sección, hasta que haya cumplido por lo menos un veinte (20) por ciento de la sentencia de reclusión en una institución correccional, excluyendo toda clase de bonificaciones y se

determine por el Secretario que no representa una amenaza para la comunidad;

(c) [T]oda persona convicta por delito grave a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual de conformidad a las disposiciones del Código Penal de Puerto Rico de 2004, y

(d) [T]oda persona convicta mientras no haya satisfecho la pena especial dispuesta en el Artículo 67 del Código Penal de Puerto Rico de 2004, antes citada.

Se podrá excluir de la aplicación de las disposiciones de esta sección a los miembros de la población correccional bajo la custodia del Departamento que confronten problemas de salud con prognosis de vida corta y con condiciones fisiológicas limitantes. Para que proceda esta exclusión deberá mediar una recomendación del Departamento acompañada de una certificación m[é]dica sobre el miembro de la población correccional con la prognosis de vida. Además, los miembros de la población correccional no deben representar peligro para la comunidad.

Nada de lo dispuesto en esta sección menoscaba el deber del Secretario de proveer y establecer programas de tratamiento y rehabilitación conforme a lo dispuesto en este Plan. 3 LPRA Ap. XVIII, Art. 16. (Énfasis nuestro).

Por otro lado, a tenor con las facultades concedidas por el Plan de Reorganización Núm. 2-2011, *supra*, el DCR promulgó el Reglamento del Programa Integral de Reinserción Comunitaria, Reglamento Núm. 9242 del 11 de diciembre de 2020 (Reglamento Núm. 9242). En lo aquí atinente, el Artículo VII de dicho cuerpo reglamentario establecía los criterios de elegibilidad específicos para los programas comunitarios de base religiosa y de Hogares CREA. De la misma forma, el Artículo VIII desglosaba las exclusiones a dichos beneficios. En específico, su inciso (1)(c) disponía que no serían elegibles para participar de los programas de desvío establecidos por el DCR toda persona convicta por delito grave de segundo grado o de un delito de mayor severidad.

Sin embargo, recientemente, el Reglamento Núm. 9242 quedó derogado por el Reglamento del Programa Integral de Reinserción Comunitaria, Reglamento Núm. 9488 de 9 de agosto de 2023 (Reglamento Núm. 9488), efectivo el 7 de septiembre de 2023. En armonía con la Ley Núm. 79-2022, el Artículo VIII del Reglamento Núm. 9488 esboza las

siguientes exclusiones para participar en los programas de desvío establecidos por el DCR:

> **No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas:**
>
> 1. **Toda persona convicta que esté cumpliendo sentencia par los siguientes delitos:**
>
>    a. Producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil.
>
>    b. Violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como Ley de Sustancias Controladas de Puerto Rico, excepto las violaciones al Artículo 404 de dicha Ley.
>
>    c. Violaciones a la Ley Núm. 134 de 28 de junio de 1969, según enmendada, conocida como la Ley de Explosivos de Puerto Rico.
>
>    **d. Toda persona convicta por delito grave de primer grado.** (Énfasis nuestro).

[…]

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

Como primer señalamiento de error, la parte recurrente sostiene que la Coordinadora del Programa de Desvío del DCR incidió al utilizar como fundamento para denegar la solicitud de participación en los programas de desvío la Ley Núm. 49-1995. En su segundo señalamiento de error, alega que dicha Coordinadora erró al indicar que el Plan de Reorganización Núm. 2-2011, *supra*, excluye de los programas de desvío a las personas convictas por asesinato en primer grado. Como tercer señalamiento de error, plantea que la referida Coordinadora violó el mandato constitucional a la rehabilitación como derecho fundamental de las personas confinadas, independientemente esta haya sido convicta por asesinato en primer grado o no. En su cuarto y último señalamiento de error, arguye que la Coordinadora del Programa de Desvío del DCR incidió al actuar de forma arbitraria e injustificada, ello en violación a su derecho a rehabilitarse y en contravención a la igual protección de las leyes y reglamentos.

En síntesis, el recurrente fundamenta sus señalamientos de error en que la reglamentación que regula los programas de desvío no excluye a las personas convictas por asesinato en primer grado, sino que promueven la rehabilitación de esta y les brinda la oportunidad de beneficiarse de los mencionados programas como una segunda oportunidad para lograr reintegrarse a la libre comunidad. Sostiene que, según la reglamentación aplicable, cualifica para participar en los referidos programas de desvío. Sobre ese particular, arguye que la Ley Núm. 49-1995, utilizada como fundamento en la determinación recurrida, fue derogada y, en su lugar, se creó el Plan de Reorganización Núm. 2-2011, *supra*. Asimismo, aduce que, aunque el DCR goza de cierta discreción, dicho organismo administrativo había actuado de forma arbitraria e irrazonable, por lo que procedía el recurso de revisión judicial. Por otro lado, señala que ha observado una conducta excelente durante los diecinueve (19) años que ha estado confinado y que cumple con todos los requisitos necesarios para estar en la libre comunidad mediante los programas de desvío. En virtud de ello, solicita que ordenemos al DCR a que le permita participar en el programa de desvío de libertad bajo supervisión electrónica o en el de hogar de adaptación.

Luego de un examen sosegado del expediente ante nos, así como de la ley aplicable, entendemos que la interpretación planteada por la parte recurrente no refleja la intención de la Asamblea Legislativa en los estatutos y reglamentación citada por este. A los fines de atender el recurso de epígrafe, hemos evaluado con detenimiento la reglamentación aprobada sobre los programas de rehabilitación disponibles para los miembros de la población correccional. Constatamos que, durante los pasados años, el Plan de Reorganización Núm. 2-2011, *supra*, ha sido enmendado en varias ocasiones y se han aprobado y derogado múltiples reglamentos, los cuales excluyen a los convictos por asesinato en primer grado de su participación en dichos programas. Actualmente, el Artículo VIII del Reglamento Núm. 9488 expresamente excluye de los programas de desvío a "[t]oda persona

convicta por delito grave de primer grado". Igualmente, el Artículo 16 del Plan de Reorganización Núm. 2-2011, *supra*, según enmendado por la Ley Núm. 79-2022, expresamente excluye de los mencionados programas a las personas convictas por delito grave de primer grado.

En el presente caso, Romero Hernández fue sentenciado, entre otras cosas, por la comisión de asesinato en primer grado. En virtud de nuestro ordenamiento jurídico vigente, el recurrente no cumple con los requisitos legales para ser elegible al Programa de Pase Extendido con Monitoreo Electrónico y a los Programas Religiosos y Hogar CREA, toda vez que su convicción por asesinato en primer grado constituye una exclusión para participar de tales programas de desvío, conforme al Reglamento Núm. 9488 y al Plan de Reorganización Núm. 2-2011, *supra*, según enmendado por la Ley Núm. 79-2022. Así las cosas, de conformidad con los fundamentos expuestos, coincidimos con los dictámenes del DCR de denegarle a la parte recurrente los referidos programas de desvío, no porque carecía de una expectativa de beneficiarse de ellos durante su proceso de rehabilitación, sino debido a que no cumple con los requisitos reglamentarios establecidos de elegibilidad.

En mérito de lo antes expuesto, sostenemos las determinaciones agenciales recurridas. Nada en el expediente de autos sugiere que los pronunciamientos que atendemos hayan resultado de un ejercicio arbitrario atribuible al DCR. Por tanto, toda vez que el recurrente no derrotó la presunción de corrección de las resoluciones que nos ocupan, confirmamos las determinaciones administrativas recurridas.

**IV**

Por los fundamentos que anteceden, confirmamos las determinaciones administrativas recurridas.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones